PAWNEE MCKNIGHT

v.

THOMAS E. PETTIGREW

(CC 825)

Submitted January 17, 1956. Decided February 28, 1956.

*Palmer & Elkins, J. Campbell Palmer, III,* for plaintiff.

*Herbert W. Bryan,* for defendant.

GIVEN, JUDGE:

The parties to this proceeding, Pawnee McKnight and Thomas E. Pettigrew, on July 23, 1954, suffered injuries in a collision between two automobiles, which collision occurred in Kanawha County. McKnight was owner and operator of one of the automobiles involved, and Pettigrew was owner and operator of the other automobile involved. Pettigrew instituted an action in the Circuit Court of Kanawha County against Pawnee McKnight, alleging that the accident was caused by the negilgence of McKnight. Later, McKnight instituted an action in the same court against Pettigrew, alleging that the accident was the result of negligence of Pettigrew. The two actions were, by the circuit court, consolidated "for trial". To the declaration filed by McKnight, Pettigrew filed the general issue plea, and also his special plea. Whereupon, McKnight filed a replication to the special plea, denominated by him special replication, to which replication Pettigrew demurred. The circuit court overruled the demurrer and, on its own motion, certified its rulings to this Court.

The special plea of Pettigrew alleges, in effect, that the defendant McKnight ought not to have the right to further maintain his action, for the reasons that the two actions are based upon, and arose out of, the same accident or occurrence; that at the time of the accident there existed a valid insurance agreement or policy whereby McKnight was insured by the Aetna Casualty and Surety Company against loss by reason of bodily injury or property damage occasioned by the use of the automobile of McKnight; that by the terms of the policy, McKnight "constituted, appointed and made said Aetna Casualty & Surety Company the agent of said Pawnee McKnight, and as such agent authorized the said Aetna Casualty & Surety Company to negotiate and make such settlement of any claim or suit against said Pawnee McKnight as it deemed expedient for and on account of any damages sought against the said Pawnee McKnight for personal injury liability and property damage liability by said Thomas E. Pettigrew in the aforesaid action of trespass on the case, instituted by said Thomas E. Pettigrew against said Pawnee McKnight in this Court; and on the 17th day of February, 1955, pursuant to its right and authority as insurer and agent of said Pawnee McKnight, as aforesaid, and for the use and benefit of, and with the knowledge and approval of said Pawnee McKnight, said Aetna Casualty & Surety Company, as agent and insurer of said Pawnee McKnight, as aforesaid, negotiated, settled and compromised the said action of Thomas E. Pettigrew against said Pawnee McKnight, for and on behalf of said Pawnee McKnight, by paying unto the said Thomas E. Pettigrew the sum of Five Thousand Dollars ($5,000.00) in settlement of the property damage and personal injury suffered by said Thomas E. Pettigrew for and on account of the aforesaid automobile collision, accident and occurrence upon which both the aforesaid actions of trespass on the case are based; and by order entered on the 17th day of February, 1955, in the aforesaid action of trespass on the case instituted in this Court by said Thomas E. Pettigrew against said Pawnee McKnight, tendered to the Court by counsel for

said Pawnee McKnight and approved by counsel for said Thomas E. Pettigrew, said action has been dismissed as settled agreed with prejudice to the plaintiff therein, said Thomas E. Pettigrew".

The special replication of the plaintiff McKnight to the special plea, after setting out the facts upon which the two causes of action were based, the consolidation of the actions "for trial", the pertinent provisions of the insurance policy issued to McKnight, the employment of J. Campbell Palmer, III, a practicing attorney at law, by the Aetna Casualty and Surety Company to defend the action instituted by Pettigrew against McKnight, the employment of the same attorney by McKnight to prosecute an action on behalf of McKnight against Pettigrew arising out of the same accident, the existence of a valid agreement or insurance policy whereby the United States Fidelity and Guaranty Company insured Pettigrew against loss occasioned to any person by the use of the automobile owned and being driven by Pettigrew at the time of the accident, and the setting for trial of the consolidated actions on February 17, 1955, alleged that: "Thereafter, at the request of said J. Campbell, III, the adjustors and representatives of each of the two aforesaid insurance companies, together with Herbert W. Bryan, and Thomas E. Pettigrew, met with the said J. Campbell Palmer III, at his office to discuss the two said pending actions. At said conference it was agreed that each insurance carrier had the right and was permitted to deal separately with the plaintiff in the action against that insurance carrier, and that either or both could make any such settlement with the injured party who was suing it, as that insurance company deemed fit and proper, and that if each insurance company could reach an amount agreeable to it and the suing party, either or both could agree to a settlement of those terms.

"There was no agreement of any kind whatsoever that if either insurance carrier did make a settlement with the injured party, that that would in any way affect the pending action, nor was there any agreement made that

it would not affect the remaining pending action if one company made a settlement and the other did not.

"Thereafter, pursuant to said understanding and agreement, the Aetna Casualty and Surety Company, acting solely in its own behalf and without the knowledge, consent or approval of Pawnee McKnight, negotiated a settlement agreement with Thomas E. Pettigrew which is attached hereto as Exhibit A and made a part hereof.

"The settlement was made under and pursuant to the terms of the aforesaid liability insurance policy, pursuant to the right of the Aetna Casualty and Surety Company so to do, no notification was given to Pawnee McKnight that any such settlement was in progress or had been made, he was not advised of the terms thereof, paid no part of the settlement or the cost thereof, has not ratified or approved said settlement, and all of the expenses thereof, including the attorney fee and the expenses of J. Campbell Palmer, III, are to be and were paid by the said Aetna Casualty and Surety Company.

"Thereafter, on the same 17th day of February, 1955, on which date the above said settlement was entered into, an order was prepared and signed by Herbert W. Bryan, counsel for Thomas E. Pettigrew, and by J. Campbell Palmer III, as attorney for the said insurance company, and acting solely for it, presented to this Court and by it duly and properly entered, a copy of which said order is attached hereto as Exhibit B, and made a part hereof.

"Thereafter, the said United States Fidelity and Guaranty Company continued the employment of Herbert W. Bryan as its attorney, and although said order had been entered, made an offer of compromise and settlement of the pending case No. 9214, of plaintiff Pawnee McKnight against Thomas E. Pettigrew, pursuant to its right so to do under the aforesaid insurance policy, and pursuant to the agreement hereinbefore related,

and the said Pawnee McKnight made counter offers to the said insurance company of the amount for which he would settle, and the parties not reaching an agreement as to a fair amount for settlement, broke off negotiations.

"Thereafter, on said 17th day of February, 1955, the Circuit Court of Kanawha County, being engaged in the trial of another case, continued case No. 9214 for trial until the 18th day of February, 1955, at which time the said plaintiff herein, Pawnee McKnight, appeared for the first time in the court room and by his counsel, J. Campbell Palmer, III, moved for trial of his said case No. 9214.

"Thereafter, the said Herbert W. Bryan, attorney for the defendant, but acting solely for and on behalf of the United States Fidelity and Guaranty Company, objected to the trial of said case, and in support of his said objection, submitted the Special Plea to which this is a Replication.

"* * *

"Thereafter, for the first time this plaintiff, Pawnee McKnight, was advised and given information that a settlement had been reached between his insurance carrier, the Aetna Casualty and Surety Company, and Thomas E. Pettigrew in Case No. 9205, and that an order had been entered dismissing it. He did not then or thereafter ratify or approve said settlement.

"Thereupon, he joined with his counsel and adjustors for the United States Fidelity and Guaranty Company, the defendant Thomas E. Pettigrew, and Herbert W. Bryan, attorney for said insurance carrier, and through his attorney made a further offer to compromise the said action, which said compromise offer was refused by said insurance carrier.

"Plaintiff says that he is advised that in the negotiations between the said Aetna Casualty and Surety Company, and the said Thomas E. Pettigrew, Herbert W. Bryan, counsel for Thomas E. Pettigrew, made it

completely clear to the Aetna Casualty and Surety Company and its attorney, J. Campbell Palmer, III, that by said settlement he was making no agreement that that settlement would or would not be a bar to the present action, and that he reserved any and all of his legal rights to claim, and, if he wished so to do, and the insurance company by which he was employed so desired, to raise any and all legal objections to the further prosecution of the instant case in which Pawnee McKnight is plaintiff and Thomas E. Pettigrew is defendant, Case No. 9214."

The replication concluded with this paragraph: "And this, said plaintiff, Pawnee McKnight, is ready to verify; and this the plaintiff prays may be inquired of by the country, whether he shall not have the right further to maintain this action."

The only provisions of the insurance policy issued to McKnight by the Aetna Casualty and Surety Company believed necessary to the consideration and determination of the questions presently before the Court are: "II. Defense; Settlementary Payments — As respects the insurance afforded by the other terms of this policy under Coverages A and B the Company shall (a) defend any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient * * *.

"13. Assistance and Cooperation of the Insured — The Insured shall cooperate with the Company and, upon the Company's request, shall attend hearings, and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others

as shall be imperative at the time of accident."

The theory upon which the special plea is based is that the two causes of action having arisen out of the same accident, the basis of each action being founded on negligence, the compromise and settlement of one of the actions necessarily bars any recovery in the other action. See *Johnson* v. *Rogers*, 110 W. Va. 232, 157 S. E. 409.

The contentions of the defendant Pettigrew are that "The special replication does not contain allegations sufficient to avoid the effect of the judgment order dismissing the action of Thomas E. Pettigrew, which was joined in by counsel for Pawnee McKnight, as alleged in the special plea, not by counsel for his insurer", and that the special replication does not "avoid the allegations of the special plea that the action of Thomas E. Pettigrew was negotiated, settled and compromised by an authorized agent of Pawnee McKnight with the knowledge and approval of Pawnee McKnight".

In Hogg's Pleading and Forms, Fourth Edition, Section 334, it is stated: "If the plaintiff would reply otherwise than generally, he must do so specially by way of confessing and avoiding the plea, wherein he must admit the truth of the matter alleged in the plea." See *McCoy* v. *Price*, 91 W. Va. 10, 112 S. E. 186; *Kinder* v. *Boomer Coal & Coke Co.*, 82 W. Va. 32, 95 S. E. 580; *Shires* v. *Boggess*, 72 W. Va. 109, 77 S. E. 542; *Hunt* v. *DiBacco*, 69 W. Va. 449, 71 S. E. 584.

For the purpose of reaching the substantial controversy, it may be assumed that the special replication sufficiently confesses each of the material allegations of the special plea. The special replication confesses the entry of the order of February 17, 1955, in the action instituted by Pettigrew against McKnight whereby the matters in difference between the parties were settled and compromised and that such proceeding was dismissed after payment of a substantial sum to Pettigrew. But are facts alleged in the special replication, which at-

tempt to avoid the effect of the entry and existence of the order of settlement and dismissal, sufficicent to do so? We are forced to answer the question in the negative. The special replication confesses the making and entry of the order, as alleged in the special plea, but, in attempting to avoid the effects of the existence of the order, does no more than set up a contention to the effect that the order does not have the meaning or effect attributed to it by the defendant Pettigrew, and the plaintiff McKnight attempts, in his oral argument and brief, to justify that contention on the theory that the attorney for McKnight was without authority to make any compromise which would bar McKnight. But the order itself remains unimpeached. Though it is admitted that McKnight had actual notice of the compromise order in time to have moved at the term at which it was entered that it be vacated, no such motion was ever made, and no proceeding was ever instituted for the purpose of directly attacking that order.

Counsel for McKnight relies on cases like *Owen* v. *Dixon & Savage*, 162 Va. 601, 175 S. E. 41; *Wieding* v. *Krisch*, — Texas —, 271 S. W. 2d 458; *Ross* v. *Stricker*, 85 Ohio App. 56, 88 N. E. 2d 80; *Burnham* v. *Williams*, 198 Mo. App. 18, 194 S. W. 751; *Foremost Dairies, Inc.*, v. *Campbell Coal Co.*, 57 Ga. App. 500, 196 S. E. 279; *Fikes* v. *Johnson*, 220 Ark. 488, 248 S. W. 2d 362, 32 A. L. R. 2d 934, holding, in effect, that a settlement made by a liability insurer of a claim against the insured, under a provision in the policy permitting the insurer to settle certain designated classes of claims, made without the consent of the insured, will not bar an action by the insured against the person receiving the consideration paid by the insurer in making the settlement. But can we reach that question in the instant case? Can the order of the court adjudicating the compromise and settlement of the matters in difference between the parties then before the court, in an action which the court had jurisdiction, be ignored or attacked collaterally, as is attempted to be done in the instant proceeding?

It must not be overlooked that the allegations of the special plea, confessed as true by the special replication, show that the recitals in the order were to the effect that the plaintiff McKnight, by his attorney, appeared in court in connection with the entry of the order of settlement, and it is admitted that McKnight had previously employed that attorney to prosecute his claim against Pettigrew and that the contract of employment continued beyond the date of the entry of the order.

In *Nelson Transfer & Storage Company* v. *Jarrett, et al.,* 110 W. Va. 97, 157 S. E. 46, this Court stated: "In determining whether an attack upon a judgment is direct or collateral, the basic factor to be considered is whether the proceeding involves a review or annulment of the judgment, or a mere avoidance of its effects, as, for example, by preventing the enforcement of an execution predicated thereon. In the former instance the attack is direct; in the latter, collateral. A judgment debtor's effort to prevent by prohibition the enforcement of an execution against him on the ground of lack of jurisdiction of the justice to enter the judgment which constitutes the basis of the execution, is a collateral attack on the judgment. For full discussion of these matters, see Freeman on Judgments, (5th Ed.,) Vol. 1, secs. 304, 312 * * *". In the instant case no direct attack on the settlement order is attempted. Only the effect thereof is attempted to be avoided.

In *Newhart* v. *Pennybacker, Judge, et al.,* 120 W. Va. 774, 200 S. E. 350, the Court held: "4. A judgment, valid on its face and rendered by a court of general jurisdiction having jurisdiction of both parties and subject matter, is not open to collateral attack." See *Crickmer* v. *Thomas,* 120 W. Va. 769, 200 S. E. 353; *Bailey* v. *Firemen's Insurance Co.,* 108 W. Va. 75, 150 S. E. 365; *Lough* v. *Taylor,* 97 W. Va. 180, 124 S. E. 585; *Smith* v. *Hall, Sheriff,* 94 W. Va. 400, 119 S. E. 166; 49 C. J. S., Judgments, Section 401; 11 M. J., Judgments and Decrees, Sections 140, 141.

The plaintiff McKnight contends further, however,

that since the mere relationship of attorney and client does not impliedly authorize the attorney to compromise a claim of his client, the order of settlement entered in the instant case does not bar the claim against Pettigrew. The principle of law relied upon, however, can not be so applied as to render of no effect an adjudication to the contrary. In *Dwight* v. *Hazlett,* 107 W. Va. 192, 147 S. E. 877, 66 A. L. R. 102, the Court held: "6. Where an attorney makes a compromise unauthorized by his client and consents to a judgment thereon, the judgment may be vacated upon the application of the aggrieved client, seasonably made." Notice the qualifying phrase if "seasonably made", clearly implying that if such an order as the one entered in the present case is not attacked "seasonably", it would constitute a bar as to the matters compromised. To the same effect is the holding in *Harris* v. *Diamond Construction Co.,* 184 Va. 711, 36 S. E. 2d 573, citing *Dwight* v. *Hazlett, supra.* See *Lawrence* v. *Montgomery Gas Co.,* 88 W. Va. 352, 106 S. E. 890; *County Court* v. *Duty,* 77 W. Va. 17, 87 S. E. 256; *Teter* v. *Irwin,* 69 W. Va. 200, 71 S. E. 115; *Stewart* v. *Stewart,* 40 W. Va. 65, 20 S. E. 862; *Singer Sewing Machine Co.* v. *Ferrell,* 144 Va. 395, 132 S. E. 312; *Long* v. *MacDougall,* 273 Mass. 386, 173 N. E. 507.

In *Teter* v. *Irwin, supra,* this Court said: "* * * The books say that when an accredited attorney appears at the bar of the court as representing clients there is a presumption of his authority, and after the court has acted the burden is upon the party denying his authority to clearly show the want of authority. *Connell* v. *Galliher,* 55 N. W. 229. The evidence must be clear. *Winters* v. *Means,* 41 N. W. 157. This is held in *Lumber Co.* v. *Lance,* 50 W. Va. 636 * * *". See *Dwight* v. *Hazlett,* 107 W. Va. 192 at 200, 147 S. E. 877, 66 A. L. R. 102.

For the reasons stated, the demurrer of the defendant to the special replication of the plaintiff should have been sustained, and the rulings of the trial court must be reversed.

*Rulings reversed.*